UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JOSHUA JEWETT,** *Plaintiff,* v. **PREMIUM MERCHANT FUNDING ONE, LLC,** *Defendant.* | Case No. **CLASS ACTION COMPLAINT** **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Joshua Jewett ("Plaintiff Jewett" or "Jewett") brings this Class Action Complaint and Demand for Jury Trial against Defendant Premium Merchant Funding One, LLC ("Defendant" or "PMF") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls to consumers without consent including calls to phone numbers that are registered on the national Do Not Call registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Jewett, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1. Plaintiff Jewett is a resident of Norwalk, Connecticut.

2. Defendant PMF is a company registered in New York, with its headquarters located in New York, New York. Defendant PMF conducts business throughout this District and throughout the US.

1

## JURISDICTION AND VENUE

3.  This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.  Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed from this District.

## INTRODUCTION

5.  As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.  When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7.  By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8.  The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 5.1 billion robocalls were placed in August 2023 alone, at a rate of 163.8 million per day. www.robocallindex.com (last visited September 18, 2023).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

13. PMF operates using the name Premium Merchant Funding.[3]

14. PMF provides merchant cash advances and business loans to businesses throughout the US.

15. PMF places solicitation calls to generate cash advances and business loans.

16. A core part of PMF's business is in placing cold calls to generate business.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/premium-merchant-funding/about/

17. PMF lists cold calling as a job responsibility, as can be seen in a job posting for a Funding Specialist on LinkedIn:

**About the job**

**Job description:**

Looking for a sales and relationship based career in a growing industry? Your sales experience coupled with our extensive training programs could be the recipe for your future success. With the economy shifting, we are facing unprecedented growth, and want you to be a part of it. Rising interest rates creates a need for businesses to turn to commercial and business lending brokers to provide them access to capital.

We are looking for highly motivated and organized individuals to join our fast growing Long Island team!

**A Funding Specialist responsibilities include:**
- Develop and maintain relationships with clients
- Provide financial advice and guidance to clients
- Responding to clients' inquiries in a professional manner
- Cross-selling our products and services where possible
- <u>Cold call potential clients to generate leads</u>
- Attending training programs as required

**Qualifications:**
- Strong sales and customer service skills
- Excellent communication and interpersonal skills
- Proficient in Microsoft Office Suite
- Bachelor's degree in finance or a related field a plus

**About Premium Merchant Funding:**
<u>Premium Merchant Funding</u> is a leading financial services company that provides innovative funding solutions for businesses of all sizes. We have offices across the US & Canada and we are looking for a talented and motivated representatives to join our team. [4]

18. In addition, PMF's past and current employees have posted comments about the cold calls they had to place in order to generate business, including:

---

[4] https://www.linkedin.com/jobs/view/funding-specialist-at-premium-merchant-funding-3711666421/

4

## Toxic work environment

Funding Specialist (Former Employee) - Southfield, MI - March 18, 2023

Horrible company to work for. They don't help you close any deals. Pay you very low, can't even afford a living. It takes forever to make money. Oh, not compassionate about overall physical health. You are just another number to them. You only get two weeks of training. It's only cold calling and you barely get anything good out of the job. You work nothing but 10-12 hours day only make a $500. Do not work here. Also they smoke all the time in the office.

✓ **Pros**
None

✗ **Cons**
Healthcare, not compassionate, long hours, no pay, no support [5]

## Waste of Time

Account Executive Intern (Former Employee) - New York, NY - December 9, 2022

I was an intern at PMF. I was "trained" for 1 hour to make a pitch for cold calling. There is no structure on what to teach by the Team Leads. Long stressful hours 10-12 hour shift for interns. No base pay, this is solely commission based, so a new intern will not make any sales in the first month or so and make no money. Team leads prefer to only accept deals where they will also make some commission and if it's too low, they will decline it since it does not benefit them and interns do not learn anything.

✓ **Pros**
You can go into Underwriting from this.

✗ **Cons**
Solely Commission Based, 10-12 hours shift, Poor Management, only teach for you to become a cold caller but not to make money, incorrect teaching methods and blaming interns for pitching incorrectly what they were taught, and the list goes on. [6]

## A call center

Financial Analyst (Former Employee) - New York, NY - May 4, 2021

Every day looks the same. You come in to work and start calling your leads. If you do not have leads, then you wont have any business/money coming in. Everyday you are making cold calls when you start off and build you client book. [7]

---

[5] https://www.indeed.com/cmp/Premium-Merchant-Funding-1/reviews
[6] Id.
[7] https://www.indeed.com/cmp/Premium-Merchant-Funding-1/reviews?start=20

5

> **Realistic review**
>
> **Funding Specialist**
> Former Employee, more than 1 year
>
> ○ Recommend  ○ CEO Approval  ○ Business Outlook
>
> **Pros**
> You learn a lot at this company in regards to sales and cold calling. Great training to turn you into an animal. Lot of potential money to be made in this industry if things go your way. If you're looking for flexible working hours, flexible dress code, and chill management this is a good place to be especially if you're young. Management does their best to help you out and provide resources while teaching you the skills to be a real salesman. Everyone starts from the same place so no one is better than you or above you. You can climb your way up the ladder to become the best.
>
> **Cons**
> You don't get a base salary and it's purely commission with no benefits such as health, dental, 401k etc. The reality is you have to be lucky in your first few months to find whales of clients to make real money. If you're under 25 it's a great place to start at especially if you don't have to worry about expenses. If you're older then you will stress out a lot so just be prepared. Everyone wants a piece of the pie so be careful who you trust even when you get lucky. Cold calling works to an extent but you'll find a lot of days where you'll be flustered. [8]

19. PMF regularly places unsolicited telemarketing calls to consumer phone numbers, such as that of Plaintiff Jewett.

20. Unfortunately, some of these calls from PMF are being placed to consumers without consent, including to consumers that registered their phone numbers on the DNC, as per Plaintiff's experience.

21. To make matters worse, PMF lacks a sufficient opt-out system to ensure that a consumer who notifies PMF to stop calling them will be removed from their calling list.

22. Consumers have posted complaints about receiving unsolicited telemarketing calls from PMF directly to PMF on its Better Business Bureau page and Google profile, including complaints from consumers who were unable to get PMF to stop calling when the consumer opted out, including:

---

[8] https://www.glassdoor.com/Reviews/Premium-Merchant-Funding-Reviews-E1317820.htm

6

- "***They will not stop spamming you with calls*** and emails. One employee verbally threatened to release my personal info to other companies without any consent. I have never reached out to this company. They reached out to me and they do not seem to understand the meaning of Im not interested or the meaning of ***take me off your contact list.***"[9] (emphasis added)

- "…Dear Better Business Bureau,***I am writing to file a formal complaint against Premium Merchant Funding regarding their persistent and harassing spam calls***. ***Despite multiple attempts to request the removal of my phone number from their contact list, the company has continued to engage in intrusive and unwanted phone calls***. This relentless behavior has ***caused me significant distress and inconvenience***, and I believe it constitutes a violation of my privacy rights.The following details outline the ongoing issues I have faced:Frequency of Calls: Premium Merchant Funding has been repeatedly calling me on an extremely regular basis, often multiple times a day, without any legitimate reason for contacting me. These incessant calls have disrupted my personal and professional life, causing unnecessary interruptions and stress.Failure to Comply with Requests: On several occasions, ***I have explicitly requested that my phone number be removed from Premium Merchant Funding's contact list***. However, their representatives have consistently ignored my pleas and continue to contact me persistently, even after expressing my lack of interest in their services.Use of Alternate Numbers: In an attempt to evade being blocked, Premium Merchant Funding has resorted to calling me from different phone numbers each time..."[10] (emphasis added)

- "Repeatedly called me at 10pm and woke me up. ***Called me back after I told them to stop.*** Kept harassing me. Totally rude and unprofessional. Had to block their different numbers. And ***my number is on the do not Call list*** so they should not call me and it was after 8 pm[11] (emphasis added)

- "Company was constantly spamming me. ***Called them to ask them to stop, and they started calling me directly.*** Blocked their number, they called again from another number. I never asked them to contact me for information about any of their services. Spamming me was one thing, calling me to harass me is another…"[12] (emphasis added)

- "We have ***received multiple calls every day, from different phone numbers***. All are starting to tell us that they are calling about our request for a business loan. Today one such person, ******, started yelling at me for taking out multiple loans and why did we take out the loans and threatening me if I didnt work with him. When I asked him his full name, not an alias, and his company full name and to

---

[9] https://www.bbb.org/us/ny/new-york/profile/small-business-loans/premium-merchant-funding-one-llc-0121-159640/complaints
[10] Id.
[11] Id.
[12] Id.

7

speak to his supervisor, he advised me that he owns the company…"[13] (emphasis added)

- "This company is garbage!!! Dont know how they got my phone number but wont stop calling or texting. When I picked up to finally *let them know they had the wrong phone number* the lady said youre a liar. We just talked two weeks ago I have never spoken to these people or applied for a loan. ***When I asked to be removed from their calling list she hung up***. I have read many similar reviews of this sort. Seems they pick the worst customer service reps and hire them. Must be a s***** person to work here is definitely a job requirement for them. Stop calling and harassing people who dont want your high interest rate scam of a loan! Losers."[14] (emphasis added)

- "Super shady company, ***told these guys to stop contacting me over and over and over again but they are relentless***. I will be changing my phone number and email due to these people. They are scam artists. Do not do business with them."[15] (emphasis added)

- "not a company I would want to do business with.you can not find any info on owners, calls are like talking with old style boiler room telemarketers. telemarketing turn over is insane. I feel what they are doing is close to a bait and switch type offerings. One of them called me and said ' yeah, we talked 6 months ago and you said to call you back, I have the 50K approved for you.' I never talked with them. So I asked, ok where is the paperwork to sign. he said, ' oh, let me get 6 months bank statements and fill out and app'. That is NOT pre approved and they did not talk with me ever. Those are lies. If someone is allowing lies on the phone, then there are other bigger issues internally."[16]

- "Predatory. ***I do not even own a business, but these people have been calling me constantly for months. They ignore requests to be removed from their calling list,*** even threatening to call even MORE when asked to stop. Again, I do not even own a business. Ownership are ghosts. This is a scam company. Positive reviews are fakes. Pray you don't end up on their distribution list."[17] (emphasis added)

23. In response to these calls, Plaintiff Jewett brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

---

[13] Id.
[14] https://www.bbb.org/us/ny/new-york/profile/small-business-loans/premium-merchant-funding-one-llc-0121-159640/customer-reviews
[15] https://www.google.com/search?q=premium+merchant+funding+reviews
[16] Id.
[17] Id.

## PLAINTIFF JEWETT'S ALLEGATIONS

24. Plaintiff Jewett registered his cell phone number ending with 2879 on the DNC on December 30, 2016.

25. Plaintiff Jewett uses his cell phone number for personal use only as one would use a residential landline telephone number.

26. The calls that Plaintiff Jewett received from Defendant PMF were all received more than 31 days after the Plaintiff registered his cell phone number on the DNC.

27. Plaintiff Jewett has received multiple unsolicited telemarketing calls from Defendant PMF to his cell phone since at least the middle of 2023.

28. PMF's employees have called Plaintiff Jewett soliciting merchant cash advances and business loans.

29. Plaintiff Jewett has asked PMF's employees to remove his phone number from their call list and has told them he is not even associated with the business they are trying to reach. Despite his stop request, the calls have continued.

30. In fact, on May 24, 2023 at 10:58 AM, Plaintiff received an email from David Alfaks, a PMF employee asking Plaintiff to fill out a loan application and send 4 months of business bank statements:



31. The above email clearly asks Plaintiff Jewett to fill out a loan application, providing the application URL:

https://streaklinks.com/BhLEo7jvbwPlqAQmNQJiPTA4/https%3A%2F%2Fwww.pmfus.com%2Fapply-now%2Fdalfaks. This URL forwards to Defendant's website: pmfus.com[18]

---

[18] https://wheregoes.com/trace/20234694424/

32. In response to the above email, Plaintiff Jewett replied by email on May 24, 2023 at 12:05 PM clearly demanding that Defendant stop calling or texting him.

> **Josh Jewett** <josh@classicprep.com>　　　　　　　　　　　　　　　Wed, May 24, 2023 at 12:05 PM
> To: David Alfaks <dalfaks@pmfus.com>
>
> no thanks. I'm not filling out another one of these forms. I am not interested. Please stop calling, texting and/or emailing me.

33. Defendant PMF did not stop calling Plaintiff's cell phone number.

34. On August 30, 2023 at 6:17 PM, Plaintiff Jewett received an unsolicited call from PMF from the phone number 332-267-3039 PMF to his cell phone.

35. When Plaintiff Jewett answered this call, an employee identified himself as working for "Premium."

36. The employee solicited the sale of a business loan. In response, Plaintiff Jewett asked the employee to remove his phone number from PMF's call list.

37. When one calls the phone 332-267-3039 the operator identifies as Premium Merchant Funding.[19]

38. On September 11, 2023 at 12:59 PM, Plaintiff Jewett received another unsolicited telemarketing call from PMF to his cell phone, from 332-275-5273.

39. When Plaintiff Jewett answered this call, an employee identified himself as working for "Premium."

40. As the employee began a sales pitch for a business loan, Plaintiff Jewett hung up the phone.

41. The employee called Plaintiff Jewett right back, at 1:00 PM, but Plaintiff did not answer the call.

---

[19] Based on an investigation conducted by Plaintiff's attorneys.

42. On September 11, 2023 at 1:41 PM, Plaintiff Jewett received yet another unsolicited telemarketing call from PMF to his cell phone, from 516-388-6687.

43. When Plaintiff Jewett answered this call, an employee identified himself as working for "Premium."

44. The employee solicited the sale of a business loan. In response, Plaintiff Jewett asked the employee to remove his phone number from PMF's call list.

45. On September 13, 2023 at 2:17 PM, Plaintiff Jewett received yet another unsolicited telemarketing call from PMF to his cell phone, from 646-766-0834.

46. When Plaintiff Jewett answered this call, an employee identified himself as working for "Premium."

47. When the employee began the solicitation of a business loan, Plaintiff Jewett asked the employee how PMF acquired his contact information. The employee explained that a broker named Jack provided Plaintiff's information.

48. Plaintiff asked the PMF employee to remove his phone number from PMF's contact list and ended the call.

49. Despite multiple stop requests, on September 15, 2023 at 12:54 PM, Plaintiff Jewett received yet another unsolicited telemarketing call from PMF to his cell phone, from 516-388-6687.

50. When Plaintiff Jewett answered this call, an employee identified himself as working for "Premium."

51. When the employee began the solicitation of a business loan, Plaintiff Jewett asked the employee how PMF acquired his contact information. The employee explained that a broker provided it but he couldn't identify the broker.

52. Yet again, Plaintiff told the employee to remove his phone number from PMF's contact list and ended the call.

53. The unauthorized solicitation telephone calls that Plaintiff Jewett received from or on behalf of Defendant PMF have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

54. Seeking redress for these injuries, Plaintiff Jewett, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

55. Plaintiff Jewett brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) PMF called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant PMF called more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the Defendant's records reflect the person requested that they stop calling.

56. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or

released. Plaintiff Jewett anticipates the need to amend the Class definition following appropriate discovery.

57. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

58. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(c) whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

59. **Adequate Representation**: Plaintiff Jewett will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Jewett has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Jewett and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Jewett nor his counsel have any interest adverse to the Classes.

60. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Jewett. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Jewett and the Do Not Call Registry Class)**

61. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

62. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

63. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were

promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

64. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Jewett and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

65. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Jewett and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

66. As a result of Defendant's conduct as alleged herein, Plaintiff Jewett and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

67. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Jewett and the Internal Do Not Call Class)**

68. Plaintiff repeats and realleges paragraphs 1-60 of this Complaint and incorporates them by reference herein.

69. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing

16

calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

70. Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls/text messages.

71. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

72. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e)  Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Jewett requests a jury trial.

<u>Respectfully Submitted,</u>

**JOSHUA JEWETT**, individually and on behalf of all others similarly situated,

DATED this 2nd day of November, 2023.

By: /s/ Stefan Coleman
Stefan Coleman
law@stefancoleman.com
COLEMAN PLLC
11 Broadway, Suite 615
New York, NY 10001
Telephone: (877) 333-9427

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
*Pro hac vice motion forthcoming

*Attorneys for Plaintiff and the putative Classes*